IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**DJUN E. WILSON,**

    **Plaintiff,**

vs.                                                         Case No. 4:17cv231-WS/CAS

**HEATH HOLLAND, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate in the custody of the Florida Department of Corrections, filed his Fourth Amended Complaint pursuant to 42 U.S.C. § 1983 on November 6, 2017, ECF No. 15, and service was directed. ECF Nos. 17, 23. Defendants have filed motions to dismiss for failure to exhaust administrative remedies, mootness, failure to state a claim, failure to demonstrate entitlement to damages, and immunity from suit. ECF No. 36 (with exhibits); ECF Nos. 42, 44. Plaintiff filed amended responses to the motions to dismiss with exhibits, which have been considered. ECF Nos. 45, 48.

**Allegations of the Fourth Amended Complaint**

Plaintiff sues Defendants Heath Holland (Assistant Warden), Kenneth Barber (Sergeant), Jeffrey Holden (Colonel), Jody Burch (Sergeant), and

Carol Pittman (Classification Supervisor) in their individual capacities. ECF No. 15 at 19. Plaintiff's Fourth Amended Complaint alleges that the Defendants denied him protective custody at the Jackson Correctional Institution which resulted in his receiving injuries from another inmate. ECF *Id.* at 6. He seeks a declaratory judgment, compensatory damages of $5 million per Defendant, punitive damages of $25 million per Defendant, costs, a jury trial, and any other appropriate relief. *Id.* at 20.

Plaintiff alleges that he arrived at the institution on April 17, 2016, and in early August 2016, Julius Bender, an inmate, was released from administrative confinement after an investigation for gang activity. *Id.* at 6. Plaintiff alleges that in late August 2016, he received a note from Bender stating he wanted Plaintiff to traffic drugs into the prison visitation area, which Plaintiff refused. Plaintiff alleges he is a known homosexual and that Bender knew, as a gang member, that any contact with homosexuals was "prohibited from all gang activity." *Id.* Plaintiff alleges that Bender still wanted him to traffic drugs for him.

Plaintiff alleges that between September 20-22, 2016, Plaintiff received a message and warning from inmate William Davis stating, "Stop what you're doing before you get hurt." *Id.* at 7. Plaintiff alleges that on those same dates, he went to Sgt. Burch and told him what had happened.

Plaintiff alleges he asked for protective custody, which Plaintiff says Sgt. Burch denied for lack of knowledge of the identity and location of the inmate whose message was sent to Plaintiff.[1]  He also alleges that Burch stated that he did not care and told Plaintiff in a rude fashion to return to his dorm.  *Id.*

Plaintiff alleges that on October 1, 2016, he was savagely and viciously beaten in the head with a lock by Julius Bender in Plaintiff's cell.  *Id.* at 7, 8.  Plaintiff was taken to the medical department where his bleeding could not be stopped.  ECF No. 15 at 8.  He alleges he was then taken to Jackson Hospital.  When he arrived back at prison, the assistant warden, Defendant Holland, asked what happened and was told Plaintiff was attacked in his cell by gang member Julius Bender.  *Id.*  Plaintiff alleges that on October 2, 2016, he informed Sgt. Barber what happened and provided a statement and identified by photograph the person who attacked him.  *Id.* at 9.

Plaintiff alleges he was in the prison infirmary for four days, was discharged on October 5, 2016, and placed in administrative confinement pending the outcome of the investigation of the attack.  ECF No. 15 at 9.

---

[1] Plaintiff cites the affidavit of William Davis.  *See* ECF No. 15 at 21.  In Davis's statement, he indicates that he was conveying a message to Plaintiff from someone else, but that Davis did not tell Plaintiff who was the source of the message.  *Id.* at 22.

He contends that from October 5 through 17, 2016, he was in constant fear because his attacker, Julius Bender, was the confinement orderly. *Id.* Plaintiff alleges that between October 5-17, 2016, he expressed his concerns about Bender being the orderly but Defendants Holland, Holden, Pittman, and Barber failed to take any measures and allowed Bender to continue to be his orderly. *Id.* He also alleges that between October 1-17, 2016, he made several statements and a photo identification of Bender as his attacker to Holland, Holden, Pittman, and Barber but they failed to act within the guidelines of the rules and federal laws. *Id.* at 10.

    Plaintiff also alleges he wrote a request to Sgt. Barber telling him about the growing conflicts with his confinement cellmate, who he alleges raped him in the late hours of October 14-15, 2016.² On October 20, 2016, Plaintiff was transferred from Jackson Correctional Institution. ECF No. 15 at 10-11. Plaintiff alleges that if Sgt. Burch had not denied him protective custody in September, he would never have been raped by his confinement cellmate. ECF No. 15 at 17. Plaintiff alleges that after he was transferred, he filed a grievance on January 18, 2017, at Everglades Correctional

---

² In his Fourth Amended Complaint, Plaintiff does not name the confinement cellmate that he contends raped him.

Case No. 4:17cv231-WS/CAS

Institution.  ECF No. 15 at 15.  He alleges he received a response stating that the grievance had been "approved."  *Id.*

Based on these alleged facts, Plaintiff raises an Equal Protection claim, a Due Process claim, and an Eighth Amendment claim, and seeks monetary damages and declaratory relief.

**Standard of Review for Exhaustion of Administrative Remedies**

In enacting the Prison Litigation Reform Act (PLRA), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-25 (11th Cir. 1998), and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary damages.  Porter v. Nussle, 534 U.S. 516, 524 (2002); Woodford v. Ngo, 548 U.S. 81, 85 (2006); Booth v. Churner, 532 U.S. 731, 738-39 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.")

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (bracketed material added). To determine "proper exhaustion" in prisoner civil rights actions, courts look to the requirements of the "prison grievance system." Woodford, 548 U.S. at 95 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). Thus, a prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007).[3] "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " Id. Courts do not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323).

---

[3] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-19 (2007) (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Case No. 4:17cv231-WS/CAS

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. See <u>Jones</u>, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the Court looks to the factual allegations in the Defendants' motion, and those in the Plaintiff's response, if any. *Id.* If they conflict, the Court accepts the Plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.; see also* <u>Bryant v. Rich</u>, 530 F.3d 1368, 1373-74 (11th Cir. 2008). If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." <u>Turner</u>, 541 F.3d at 1082. "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the

parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1377.

A prisoner must comply with the processes and established grievance procedures of the institution. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In Florida, a state-incarcerated prisoner generally must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC.[4] Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33-103.005-103.007).

An Inmate Orientation Handbook is given to all inmates upon entering the custody of the Florida Department of Corrections to help them "understand the general rules, procedures, requirements and routines" of prison life. The Handbook states:

> The Department has a grievance process available for you to resolve issues you may have. You are encouraged to make every effort to resolve your issue prior to filing a grievance. There are two types of grievances, informal and formal. Grievance types and procedures will be explained to you during orientation and can be found in Rule 33-103, Florida Administrative Code.

---

[4] The inmate may skip the informal grievance step and immediately file a formal grievance for certain complaints, including medical grievances. *See* Fla. Admin. Code § 33-103.006(2)(g).

Case No. 4:17cv231-WS/CAS

Form N11-091 at 16, Inmate Orientation Handbook (Revised 12/2/16).[5]

The Department's procedures specify the manner in which grievances must be filed and provide time limits for doing so.  See Fla. Admin. Code R. 33-103.011.  With certain exceptions not applicable here, an inmate must file an informal grievance within twenty days after the incident or action being grieved.  Rule 33-103.004 and 33-103.011(1)(a), Fla. Administrative Code.  If the issue is not resolved at the informal level, the inmate must then file a formal grievance to the Warden at the institutional level.  Rule 33-103.006, Fla. Admin. Code.  If the issue is not resolved at the institutional level, the inmate may file a request for administrative remedy or appeal to the Office of the Secretary of the Florida Department of Corrections.  Rule 33-103.007, Fla. Admin. Code.

**Analysis**

Defendants move to dismiss the Fourth Amended Complaint on the ground that Plaintiff failed to exhaust his available administrative remedies. ECF No. 36 at 6; ECF No. 42 (adopting motion to dismiss).  Defendants correctly note that Plaintiff filed only one administrative grievance—on January 18, 2017.  *Id.* at 12.  Defendants contend that the grievance was

---

[5] The Inmate Orientation Handbook is available on the Department of Corrections' website at www.dc.state.fl.us/pub/files/InmateOrientationHandbook.pdf (last visited December 12, 2018).

"empty of any information or claim for the case at bar" and "none of the issues in the case at bar have proceeded through the required administrative procedures properly." ECF No. 36 at 13. They argue that Plaintiff's grievance did not allege that anyone failed to protect him or that a failure to protect led to the beating or the subsequent rape while in administrative confinement. *Id.* at 13. Defendants further contend that the grievance did not name any person who violated his rights. *Id.* For these reasons, Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the administrative grievance procedures set forth for Florida inmates.

Plaintiff responds that he was transferred from Jackson Correctional Institution to Everglades Correctional Institution on October 20, 2016, "before the grievance could be filed at that institution, before the 15 day timeframe, but was filed at Everglades Correctional Institution" January 18, 2017. ECF No 45 at 2. In his grievance, Plaintiff stated:

> This is my 2d grievance on this for the 1st one is presumed lost.[6] On 10-1-16 I was gang-related assaulted and my attacker gets off without a D.R. and no one referred my case to the I.G. or F.B.I. In addition, after I positively Id my attacker to the investing[ating] Sgt. and to members of I.C.T. at Jackson

---

[6] Plaintiff has not provided any specific facts which explain when the earlier grievance was filed, where it was alleged to have been filed, or if the earlier grievance was lost or failed to be logged in to the grievance records. Even so, he does not allege that he filed a formal grievance, which would have been appropriate after not receiving a response.

Case No. 4:17cv231-WS/CAS

> C.I. all I got was a transfer. Also there is no Special Review between me and my assaulter. He may come here. Where is my justice. Fellow inmates that is here told me what happened after I left Jackson, who were there when I was viciously and savagely beaten. This incident is bigger than me getting gay bashed by a gang member.

ECF No. 36-1 at 3. Plaintiff contends that he exhausted his administrative remedies because the informal grievance filed at Everglades Correctional Institution was "approved." ECF No. 15 at 15; ECF No. 45 at 1; ECF No. 36-1 at 2. The January 19, 2017, response to his grievance stated that Plaintiff's assigned classification officer had been advised to complete the special review against inmate Julius Bender, who was identified during the review process. ECF No. 36-1 at 3.

Plaintiff does not explain why his grievance filed at Everglades did not contain the allegations of failure to protect that he now asserts. He never raised the issue of failure to protect, as alleged here, with prison officials. His grievance is entirely about the events which transpired after his attacks, but the complaint against the Defendants is based on their actions before the attacks. For Plaintiff to now bring a claim for failing to protect him, he had to grieve the fact that Defendants did not protect him. He did not.

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." <u>Jones v. Bock</u>, 549 U.S. 199, 204-209 (2007). The prison's

requirements, rather than the PLRA, dictate the level of detail necessary for proper exhaustion.  *Id.* at 218.  Plaintiff did not allow the prison system the opportunity to resolve the grievance, and the matter resolved in the grievance pertained not to being denied protective custody at Jackson Correctional Institution or any failure to be protected from the alleged attack by Julius Bender.  Instead, Plaintiff's grievance sought a special review to prevent his alleged attacker from being assigned to Everglades Correctional Institution.  *See* ECF No. 36-1 at 3; ECF No. 30 at 45.  Because Plaintiff's grievance did not grieve the matters about which he now complains, Defendants have met their burden of demonstrating failure to exhaust administrative remedies.  The Fourth Amended Complaint should be dismissed without prejudice.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that the Defendants' motions to dismiss (ECF Nos. 36, 42) be **GRANTED** and Plaintiff's Fourth Amended Complaint (ECF No. 15) be **DISMISSED without prejudice** for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997(e); and that the Order adopting this Report

and Recommendation direct the Clerk of Court to note on the docket that this case was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[7]

**IN CHAMBERS** at Tallahassee, Florida on December 18, 2018.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

[7] Jones v. Bock held that exhaustion was not a pleading requirement but an affirmative defense and "noted, that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." 549 U.S. at 216.

Case No. 4:17cv231-WS/CAS